*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@appellate.courts.state.ak.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| SIDNEY R. HERTZ, | ) |
| | ) Supreme Court No. S-14454 |
| Appellant, | ) |
| | ) Superior Court No. 3AN-10-11374 CI |
| v. | ) |
| | ) O P I N I O N |
| JOHN MACOMBER and | ) |
| CLIFTON SIMONS, | ) No. 6764 - March 22, 2013 |
| | ) |
| Appellees. | ) |
| | ) |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Mark Rindner, Judge.

Appearances: Sidney Hertz, pro se, Salem, Oregon, Appellant. Marilyn J. Kamm, Assistant Attorney General, and Michael C. Geraghty, Attorney General, Juneau, for Appellees.

Before: Fabe, Chief Justice, Winfree and Stowers, Justices. [Carpeneti, Justice, not participating.]

WINFREE, Justice.

I.      INTRODUCTION

A prisoner sentenced in 1984 applied for an early furlough release in 2009 but refused to agree to comply with any furlough release conditions, arguing that imposing conditions that were not part of his sentence violated his due process rights and

constituted double jeopardy. The State of Alaska, Department of Corrections (DOC) denied the early furlough release, but the prisoner was released on mandatory parole shortly thereafter.

The prisoner subsequently sued two DOC probation officers, alleging they lacked authority to impose furlough release conditions and that doing so violated his constitutional rights. The superior court dismissed the complaint. On appeal the prisoner challenges the superior court's dismissal and attempts to collaterally attack conditions of his mandatory parole. Issues regarding the prisoner's mandatory parole are not properly before us and we will not consider them. Because DOC probation officers are mandated by statute and administrative regulation to impose appropriate conditions on furlough releases without regard to conditions set in an original sentence, and because these mandates alone do not violate a prisoner's rights under the Alaska or United States Constitutions, we affirm the superior court's dismissal of this case.

## II.    FACTS AND PROCEEDINGS

### A.    Factual Background

Sidney Hertz was convicted of second-degree murder in 1984. He was sentenced to a 40-year term with a 20-year restriction on parole eligibility, without any program or treatment conditions stated for release. Hertz applied for an early furlough release in October 2009 but was denied because he "refused to sign any furlough release paperwork that forced [him] to take any type of [programming] or treatment." Hertz believed that the imposition of any treatment programs or community service as a condition of furlough release would amount to an enhancement of his sentence, constituting double jeopardy and violating his due process rights. In June 2010 Hertz reiterated his refusal to agree to furlough conditions. Hertz was released on mandatory parole in October 2010 with special parole conditions, including a requirement that he have substance abuse evaluations and treatment if recommended.

**B.      Procedural History**

Hertz filed a post-conviction relief (PCR) application with the superior court in October 2010, asserting that the current laws governing mandatory parole conditions are unconstitutional and ex post facto as applied to him. Hertz argued that he should not be subject to mandatory parole supervision under AS 33.16.150 because the statute was passed after he was sentenced. The superior court denied the PCR application in May 2011, concluding that Hertz is subject to the mandatory parole statutes and, citing *James v. State*,[1] that the relevant parole policies and procedures are constitutional and not ex post facto as applied to Hertz.

The day after he filed his PCR application, Hertz filed a separate complaint against probation officers John Macomber and Clifton Simons. This complaint — not the PCR application challenging the conditions of his mandatory parole — underlies this appeal. Hertz alleged that Macomber and Simons denied him due process under the state and federal constitutions by refusing to grant him early furlough release from prison because Hertz refused to agree to furlough conditions. Hertz also alleged that any forced treatment programs would constitute double jeopardy because the sentencing court did not include treatment programs in his sentence. Finally Hertz alleged that Macomber and Simons's actions were ex post facto punishment. Hertz requested declaratory and injunctive relief, compensatory and punitive damages, and damages for emotional duress and mental anguish.

After the superior court denied Hertz's PCR application in May 2011, Macomber and Simons filed a motion to dismiss the suit against them. They asserted that because the court had denied Hertz's PCR application and found the conditions of mandatory parole release valid, they obviously had good grounds to impose related

---

[1]      244 P.3d 542 (Alaska App. 2011).

conditions on Hertz's furlough application. The court granted Macomber and Simons's motion to dismiss in June 2011. The court concluded it did not need to evaluate whether specific furlough conditions were appropriate in Hertz's case because "Hertz opposes the right of the [DOC], specifically Parole Officers Macomber and Simons, to impose *any* treatment programs as conditions of furlough." Citing *State v. Felix*,[2] the court held that DOC "possesses the general authority to impose conditions on a prisoner's release on furlough." The court also referenced the court of appeals' holding in *James v. State* that "the authority to impose and revoke parole is inherent in a criminal sentence."[3] The court concluded, as a matter of law, that "Macomber and Simons have the authority to impose and/or implement such conditions in their capacity as officers of the [DOC]."

Hertz appeals, arguing that because *James v. State* involved parole, his case is distinguishable and that the superior court erroneously dismissed his suit against Macomber and Simons. Hertz also contends that DOC wrongfully imposed conditions on his mandatory parole release and in doing so facially violated his constitutional rights. Macomber and Simons respond that: (1) Hertz cannot state a claim for relief against them regarding his mandatory parole unless he prevails in his PCR action and has his challenged parole conditions declared invalid; (2) Hertz lacks standing to challenge the conditions of release for a furlough because he "admits he 'refused to sign the furlough paperwork' "; (3) it was legally proper for them to require Hertz to do treatment as a furlough condition; and (4) the court of appeals' *James v. State* ruling regarding parole

---

    [2]    50 P.3d 807, 815 (Alaska App. 2002) (holding "furloughs are within the authority of [DOC], not the courts" (quoting *State v. Couch*, 991 P.2d 1286, 1289 (Alaska App. 1999))).

    [3]    244 P.3d at 546 (citing *Hill v. State*, 22 P.3d 24, 29 (Alaska App. 2001)).

conditions[4] applies with equal force to furlough release conditions.

## III.   STANDARD OF REVIEW

We review de novo a trial court's decision granting or denying a motion to dismiss.[5] "Issues regarding the constitutionality of statutes are questions of law that we review *de novo*."[6]

## IV.   DISCUSSION

### A.   This Case Concerns Conditions On Furlough Release, Not Conditions On Mandatory Parole.

Hertz alleged that his constitutional rights were violated by Macomber and Simons's "refusing to give [Hertz] early release [furlough] from prison based on the fact that [he] refused to take any programs for furlough." However, the bulk of Hertz's appeal is devoted to mounting a collateral attack on conditions imposed on his subsequent mandatory parole release.

In this context Hertz appears to conflate furlough and parole. But furlough and parole are two different things. Furlough is granted on a discretionary basis;[7]

---

[4]     *Id.* (holding imposition of special parole conditions pursuant to AS 33.16.150, implemented in 1985, on mandatory parole for pre-1985 convictions does not violate ex post facto clause).

[5]     *Varilek v. City of Houston*, 104 P.3d 849, 851 (Alaska 2004) (citing *McElroy v. Kennedy*, 74 P.3d 903, 906 (Alaska 2003); *In re Life Ins. Co. of Alaska*, 76 P.3d 366, 368 (Alaska 2003)).

[6]     *L.D.G., Inc. v. Brown*, 211 P.3d 1110, 1118 (Alaska 2009) (citing *State v. Alaska Civil Liberties Union*, 978 P.2d 597, 603 (Alaska 1999)).

[7]     AS 33.30.101(b) ("[T]he commissioner *may* grant a furlough . . . .") (emphasis added).

mandatory parole is not.[8]  "Furlough" is statutorily defined as "an authorized leave of absence from actual confinement for a designated purpose and period of time"[9] and is governed by AS 33.30.101 and 22 Alaska Administrative Code (AAC) 05.321. "Mandatory parole" is statutorily defined as "the release of a prisoner . . . for the period of good time credited under AS 33.20, subject to conditions imposed by the board and subject to its custody and jurisdiction"[10] and is governed by AS 33.16.010(c) and 22 AAC 20.265.  Issues regarding Hertz's mandatory parole are not properly before us, but rather are properly before the court of appeals in Hertz's PCR appeal.  We therefore will not consider Hertz's arguments regarding his mandatory parole conditions.

### B.     The Superior Court Did Not Err In Dismissing Hertz's Complaint.

#### 1.     Overview

In granting the motion to dismiss, the superior court determined that "Hertz opposes the right of the [DOC], specifically Parole Officers Macomber and Simons, to impose *any* treatment programs as conditions of furlough."  (Emphasis in original.) Hertz does not challenge this assessment.  In other words, Hertz's position was that DOC lacked any authority to impose early furlough conditions that were not a part of his original sentence and that doing so facially violated his federal and state constitutional rights.  Hertz did not argue that even if DOC generally has the authority to impose furlough conditions that are not a part of an original sentence, DOC's proposed

---

[8]     AS 33.16.010(c) ("A prisoner . . . *shall* be released on mandatory parole . . . .") (emphasis added).

[9]     AS 33.30.901(9); *see also* 22 AAC 05.660(c)(2) (2011) (defining "furlough" as an "authorized absence of a prisoner from a facility for a designated purpose and period of time").

[10]     AS 33.16.900(8).

conditions in his particular case would have violated his constitutional rights.[11] We also note that in light of Hertz's release on mandatory parole a few months after his efforts for an early furlough release, Hertz's equitable relief claims are moot. Only his claims for damages under the United States and Alaska Constitutions remain.[12]

We first address whether DOC has authority under relevant statutes and regulations to impose furlough conditions that are not a part of an original sentence, and we conclude that it does. We next address Hertz's claim that the statutory and regulatory framework violates his constitutional rights to be free from ex post facto laws and double jeopardy, and we conclude that it does not. We then address Hertz's federal due process claim, and conclude that he has no federal constitutional liberty interest in an early furlough that would be protected by the United States Constitution's due process provisions. We finally address Hertz's state due process claim, and conclude that the statutory and regulatory framework does not facially violate his Alaska Constitutional due process rights.

### 2. Alaska law authorizes DOC to impose furlough release conditions regardless of whether those conditions were part of an original sentence.

Hertz argues that DOC officials have no authority to impose conditions on his furlough application because no release conditions were ordered when Hertz's sentence was imposed in 1984. But the Alaska Legislature has committed decisions granting prisoner furloughs and crafting appropriate release conditions to DOC's

---

[11] *See generally State v. Am. Civil Liberties Union of Alaska*, 204 P.3d 364, 372 (Alaska 2009) (discussing distinction between facial and as-applied challenge).

[12] Hertz brings his federal constitutional claim under 42 U.S.C. § 1983 (2006) (authorizing civil actions for damages resulting from deprivation of federal constitutional rights). We have yet to imply a private cause of action for damages under the Alaska Constitution. *See Adkins v. Stansel*, 204 P.3d 1031, 1034 (Alaska 2009).

administrative discretion, not to Alaska's sentencing courts.[13] We see nothing in the relevant statutes suggesting furlough conditions must be a part of a prisoner's original sentence, and are unaware of any authority supporting that argument.

DOC has exercised this delegated authority by enacting regulations comprehensively governing furloughs based on: "(1) a prisoner's rehabilitative, treatment, and personal needs, (2) the prisoner's level of dangerousness, and (3) the

---

[13] *See* AS 33.30.101(a) (granting DOC Commissioner authority to "adopt regulations governing the granting of prerelease . . . furloughs to prisoners" for any of eight statutorily enumerated purposes, including to "secure a residence or make other preparation for release"); AS 33.30.111(c) (establishing specific guidelines for prerelease furloughs to minimize risk to public); *see also Rust v. State*, 582 P.2d 134, 137 (Alaska 1978) ("Alaska's statutory provisions leave little doubt that the legislature intended to place authority for administering matters affecting prisoners with the Commissioner of [DOC].").

The superior court relied on AS 33.30.101, the statute governing furloughs, as well as the court of appeals' decision in *State v. Felix*, 50 P.3d 807, 815 (Alaska App. 2002) (holding that granting or denying furlough lies within DOC's discretionary authority), to reach its conclusion that DOC "possesses the general authority to impose conditions on a prisoner's release on furlough." In a "*cf.*" citation immediately following its conclusion, the superior court also noted the court of appeals' statement in *James v. State* 244 P.3d 542, 546 (Alaska App. 2011) that "the authority to impose and revoke parole is inherent in a criminal sentence." Hertz contends that this citation shows the superior court dismissed his suit based on an analysis of the *James* case and asserts that the *James* facts are distinguishable from his own. This is an incorrect reading of the superior court's order: "As a citation signal, *cf.* directs the reader's attention to another authority . . . in which contrasting, analogous, or explanatory statements may be found." BLACK'S LAW DICTIONARY 260 (9th ed. 2009). Whether the court cited *James* (involving mandatory parole) as supporting or contrasting *Felix* (involving furloughs) is unclear; but it is clear the superior court relied on *Felix* and AS 33.30.101, not on *James*, to conclude that DOC parole officers have the authority to impose furlough release conditions.

ability of [DOC] to adequately supervise the prisoner's release."[14]  22 AAC 05.316 authorizes prerelease or short-duration furloughs for certain purposes, after consideration of specified factors and meeting specified criteria.  22 AAC 05.321 authorizes granting early furlough release at DOC's discretion, establishes eligibility conditions for early furlough release, and creates an avenue of appeal for denied furlough requests.  These regulations make clear that DOC may require prisoners to agree to comply with release conditions to be eligible for early furlough release.[15]

We therefore must determine whether the early furlough release conditions imposed by 22 AAC 05.316 and .321 exceed DOC's authority.

> Regulations are presumptively valid and will be upheld as long as they are consistent with and reasonably necessary to implement the statutes authorizing their adoption . . . . Thus where a regulation is adopted in accordance with the Administrative Procedures Act, and the legislature intended to give the agency discretion, we review the regulation first by ascertaining whether the regulation is consistent with the statutory provisions which authorize it and second by determining whether the regulation is reasonable and not arbitrary.[16]

---

[14]    *Felix*, 50 P.3d at 817 (citing AS 33.30.101-181 and 22 AAC 05.310-326); *see also* 22 AAC 05.121(j)(12) (clarifying that prisoner released on furlough is still within DOC custody and subject to supervision).

[15]    *See* 22 AAC 05.321(e) ("[R]estrictions and supervision required for a prerelease furlough must provide safeguards that minimize risk to the public . . . ."); 22 AAC 05.321(c) ("To be eligible for consideration for a prerelease furlough, the prisoner must . . . agree in writing to abide by the conditions established for the prisoner's behavior while on furlough.").

[16]    *Libertarian Party of Alaska, Inc. v. State*, 101 P.3d 616, 622 (Alaska 2004) (quoting *Interior Alaska Airboat Ass'n v. State, Bd. of Game*, 18 P.3d 686, 689-90 (Alaska 2001)) (internal quotation marks omitted).

22 AAC 05.316 and .321 are consistent with AS 33.30.101 and .111. The statutes authorize DOC to implement policies regarding prerelease furloughs and provide for restrictions and supervision to safeguard the public prior to granting any prisoner furlough release. The regulations implement the statutes by specifying furlough considerations, conditions, and restrictions. The regulations are reasonable and not arbitrary. 22 AAC 05.321(e) mandates that the "restrictions and supervision required for a prerelease furlough must provide safeguards that minimize risk to the public." 22 AAC 05.321(c) establishes reasonable furlough eligibility requirements, including that a prisoner "not have a pending disciplinary action" and that a prisoner must "agree in writing to abide by the conditions established for the prisoner's behavior while on furlough." Imposing these conditions enables DOC staff to fulfill AS 33.30.101's mandate: creating and implementing regulations concerning furlough release while considering "the best interests of the prisoner and the public." For these reasons, the administrative regulations governing furlough release are valid.

### 3. Alaska laws governing furlough release conditions do not constitute ex post facto punishment or trigger double jeopardy.

Hertz appears to argue that AS 33.30.101, the current statute permitting furlough release, is ex post facto as applied to him because the statute was passed two years after his sentencing.[17] But the statute governing rehabilitation furloughs when Hertz was sentenced in 1984 did not authorize a general furlough release and expressly allowed DOC employees to impose release conditions on those prisoners furloughed for rehabilitative purposes.[18] Prior to 1986, Hertz had no opportunity for a furlough release;

---

[17] Ch. 88, § 6, SLA 1986.

[18] *See* Former AS 33.30.260 (1976) (Rehabilitation Furloughs):

The commissioner may authorize a prisoner to participate in

(continued...)

the current statutory and regulatory framework is more, not less, favorable to Hertz.[19] Hertz therefore has no viable federal or state ex post facto claim.

Hertz's other assertion that imposing furlough release conditions constitutes "multiple punishment for the same offense" in violation of constitutional proscriptions against double jeopardy is unfounded. It is not punishment to allow a prisoner an early release furlough, with or without conditions.

### 4. Alaska laws governing furlough release conditions do not violate federal due process rights.

Hertz does not have a federally created liberty interest in furlough release protected by the federal constitution. In *Diaz v. State, Department of Corrections*, we explained that the "point at which restraints on a convicted prisoner's freedom implicate a federal-constitution-based liberty interest requiring due process of law is when . . . freedom is restrained in excess of [the] sentence in an unexpected manner."[20] Prisoner

---

[18]    (...continued)
educational, training, medical, psychiatric, or other rehabilitation programs approved by the commissioner. When the prisoner is not participating in a rehabilitation program, the prisoner shall be confined in the jail unless the commissioner directs otherwise. *If the prisoner violates the conditions established for the conduct or custody of the prisoner, the commissioner may order the balance of the prisoner's sentence to be spent in actual confinement.* (Emphasis added.)

Ch. 171, § 6, SLA 1976.

[19]    *See generally Doe v. State*, 189 P.3d 999, 1003 (Alaska 2008) (explaining ex post facto clause applies only to laws having adverse effects such as increasing punishment or eliminating a defense).

[20]    239 P.3d 723, 730 (Alaska 2010) (citing *Sandin v. Conner*, 515 U.S. 472,
(continued...)

Diaz was released and placed on electronic monitoring by DOC.[21] Diaz's employer accused her of theft, and DOC officers returned her "to a correctional center for the remaining four weeks of her sentence, where she was briefly segregated from the general population and had her telephone privileges restricted for a few days."[22] We held that Diaz's federal due process rights were not violated because DOC's actions "did not implicate a liberty interest based in the Fourteenth Amendment because they did not prolong her sentence."[23] *Diaz*'s logic applies here with equal force; because denying Hertz a furlough release did not prolong his overall sentence or introduce new restraints on his freedom, it did not implicate federal due process rights.

In *Diaz* we also recognized that a federal constitutionally protected liberty

---

(...continued)
484 (1995) (noting Due Process Clause of its own force protects an interest in freedom from restraint exceeding sentence in an unexpected manner)); *see also Larson v. Cooper*, 90 P.3d 125, 134 (Alaska 2004) (holding under the Fourteenth Amendment, "[a]s long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight." (quoting *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460-61(1989))).

[21]     *Diaz*, 239 P.3d at 725.

[22]     *Id*. at 724-25.

[23]     *Id*. at 730 (citing *Sandin*, 515 U.S. at 476, 484, 487 (rejecting argument that prisoner had liberty interest under Due Process Clause in remaining free from disciplinary segregation because underlying record of misconduct would not inevitably affect sentence duration)); *Larson*, 90 P.3d at 134 (citing *Hewitt v. Helms*, 459 U.S. 460, 468 (1983) ("'[T]he guarantee of due process does not provide . . . a right to avoid segregation from the general prison population.'")).

interest may be created by state law.[24]  We noted that "[i]n *Sandin v. Conner . . .* the United States Supreme Court held that generally the only state-created liberty interests protected by the Fourteenth Amendment are those in freedom from restraints which 'impos[e] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.' "[25]  DOC's denial of Hertz's furlough release did not create an atypical or significant hardship for Hertz in comparison to ordinary prison life because it simply resulted in a continuation of the status quo of the sentence imposed on him in 1984.[26]  Hertz therefore did not have a state-law-based liberty interest in furlough release protected by the federal constitution.  This conclusion is consistent with federal case law.[27]

---

[24]     *Diaz*, 239 P.3d at 730.

[25]     *Id*. at 731 (quoting *Sandin*, 515 U.S. at 484) (citing *Larson*, 90 P.3d at 135).

[26]     *See, e.g.*, *Dominique v. Weld*, 73 F.3d 1156, 1159-61 (1st Cir. 1996) (holding removal of convicted prisoner from community work release program did not implicate state-created liberty interest because "his transfer to a more secure facility subjected him to conditions no different from those ordinarily experienced by large numbers of other inmates serving their sentences in customary fashion").

[27]     *See, e.g.*, *Lee v. Governor of State of N.Y.*, 87 F.3d 55, 58 (2nd Cir. 1996) (holding rule rendering inmate eligible for temporary release program did not implicate interest protected by Fourteenth Amendment);  *Venegas v. Henman*, 126 F.3d 760, 765 (5th Cir. 1997) ("The loss of the mere opportunity to be considered for discretionary early release is too speculative to constitute a deprivation of a constitutionally protected liberty interest."); *Elliott v. Vt. Dep't of Corr.*, No. 1:08-CU-42, 2008 WL 5104203, at *3 (D. Vt. Nov. 6, 2008) ("Given that the DOC has unbridled discretion with respect to each furlough applicant, it cannot be argued that Plaintiff had a legitimate expectation of release entitling him to due process protection." (citing *Olim v. Wakinekona*, 461 U.S. 238, 249 (1983) (no state-created liberty interest when decision-maker can deny relief "for any constitutionally permissible reason or for no reason at all"))); *Seifert v. Hofmann*, No. 2:08-CU-259, 2009 WL 4931323, at *6 (D. Vt. Dec. 15, 2009) (holding

(continued...)

In the absence of a liberty interest in furlough release protected by the federal constitution, Hertz's federal due process claim must fail.

**5.     Alaska laws regarding furlough release conditions do not facially violate state consititutional due process rights.**

We have "interpreted the due process guarantee under the Alaska Constitution more broadly than the United States Supreme Court has interpreted the identical provision of the United States Constitution."[28]  For example, article 1, section 12 of the Alaska Constitution gives rise to a constitutional right to rehabilitation affecting the due process analysis of a prisoner's liberty interests,[29] and furloughs are explicitly designed to further the goal of rehabilitation.[30]  But the right to rehabilitation does not create a right to furlough for all prisoners.

Eligibility for furlough release depends as a threshold matter on a prisoner's custody classification.  22 AAC 05.201 describes different custody levels that prisoners may be assigned and establishes the degree of staff supervision required for the custody level.  "Minimum Custody" prisoners may be eligible for furlough 36 months before scheduled release,[31] "Medium Custody" prisoners may be eligible for furlough 24

---

[27]     (...continued)
inmate had "no liberty interest in early release from prison").

[28]     *James v. State, Dep't of Corr.*, 260 P.3d 1046, 1051 (Alaska 2011) (citation omitted) (internal quotation marks omitted).

[29]     *See Larson*, 90 P.3d at 135 (recognizing visitation is component of constitutional right to rehabilitation).

[30]     *See, e.g.*, AS 33.30.101(a) ("The commissioner shall adopt regulations governing the granting of prerelease and short-duration furloughs to prisoners [for a list of reasons related to rehabilitation or] . . . for any other rehabilitative purpose . . . .").

[31]     22 AAC 05.201(b)(1)(D).

months before scheduled release,[32] and "Close Custody" prisoners are not eligible for furlough.[33] Prisoners are subject to reclassification at the superintendent's discretion, which must include a review of the prisoner's furlough eligibility.[34] In *McGinnis v. Stevens* we held that once in DOC custody, the "decisions of prison authorities relating to classification of prisoners are completely administrative matters regarding which the inmate has no due process rights beyond the expectation of fair and impartial allocation of the resources of the prison system to its charges."[35] The same is true for furlough eligibility. In the absence of a claim that Hertz was denied fair and impartial consideration and that DOC was motivated to impose particular furlough release conditions for an improper purpose, we see no violation of Hertz's state constitutional due process rights.

## V.    CONCLUSION

For the reasons stated above, we AFFIRM the superior court's dismissal of Hertz's suit against Macomber and Simons.

---

[32]    22 AAC 05.201(b)(2)(D).

[33]    22 AAC 05.201(b)(3)(E).

[34]    22 AAC 05.212(a).

[35]    543 P.2d 1221, 1237 (Alaska 1975) (also noting that if administrative classification action is motivated by and is pretext for disciplinary action, Alaska Constitution will afford inmate greater due process protections).